E-FILED
Thursday, 31 May, 2007  11:01:37 AM
Clerk, U.S. District Court, ILCD

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### URBANA DIVISION

_____

| | |
|---|---|
| UNITED STATES OF AMERICA,           ) | |
|                                     ) | |
|             **Plaintiff,**          ) | |
|      **v.**                         ) | **Case No. 05-CR-20029** |
|                                     ) | |
| GARY KNOX,                          ) | |
|                                     ) | |
|             **Defendant.**          ) | |

## OPINION

This case is before the court for ruling on various motions filed by Defendant, Gary Knox. This court has carefully considered Knox's arguments and the Government's Response. Following this careful review, this court rules as follows: (1) Knox's Motion to Dismiss Indictment (#66) is DENIED; (2) Knox's Motion for Relief from his Change of Plea (#67) is DENIED; (3) Knox's Motion to Withdraw Plea of Guilty (#68) is DENIED in part and reserved in part; (4) Knox's Motion to Rescind Defendant's Waiver of Ineffective Assistance of Counsel (#70) is DENIED as moot; (5) Knox's Motion to Amend/Correct (#71) is GRANTED; (6) Knox's Motion Regarding Court's order to Produce Documents and Evidence (#77) is DENIED in part and, in part, reserved for ruling at the hearing to be set in this case; and (7) Knox's Motion for Leave to File Reply to Government's Response (#78) is GRANTED.

## BACKGROUND

On August 5, 2005, Knox was charged in a 42-page, factually detailed, 11-count superseding indictment (#13) with three counts of bank fraud, in violation of 18 U.S.C. § 1344, one count of wire fraud, in violation of 18 U.S.C. § 1343, six counts of mail fraud, in violation of 18 U.S.C. § 1341, and one count of conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h). In the superseding indictment, co-defendants Frank Kelly Ciota and Dennis Wiese, Jr. were also

charged with various offenses.  The superseding indictment alleged that Knox and others devised a scheme to defraud that began in 1999 and continued into 2005 and involved more than 150 fraudulent real estate transactions, totaling more than $8 million, with the defendants receiving at least $3 million in proceeds from the fraudulent scheme.   Robert A. Alvarado of the Federal Defender's office was appointed to represent Knox.  Ciota was represented by retained counsel, Jeffrey T. Page, and Wiese was represented by retained counsel, Jeffrey B. Steinback and Lawrence S. Beaumont.  Following several continuances, trial in this case was scheduled to begin on May 1, 2006, and was expected to take approximately one month.

On April 17, 2006, a change of plea hearing was held and Ciota pleaded guilty to the eight counts of the superseding indictment against him.  On April 19, 2006, Knox pleaded guilty to all 11 counts of the superseding indictment against him.  Neither Ciota nor Knox had a written plea agreement.  Wiese also pleaded guilty on April 19, 2006.  However, Wiese had a written plea agreement and pled guilty to four of the counts against him with the remaining counts to be dismissed at sentencing.  Sentencing was scheduled for August 29 and 30, 2006.  Sentencing was continued and rescheduled several times and eventually was scheduled for May 18, 2007, at 9:15 a.m.

## PENDING MOTIONS

On April 18, 2007, almost one year after his guilty plea, Knox filed lengthy pro se motions. He filed a 42-page Motion to Dismiss Indictment (#66), with attached exhibit, a 14-page Motion for Relief from his Change of Plea (#67), and a 19-page Motion to Withdraw Plea of Guilty (#68), with attached exhibit.  The last page of Knox's Motion to Dismiss Indictment was entitled "Waiver." Knox stated that his motion to withdraw his plea of guilty included a claim of ineffective assistance of counsel.  He stated that he "does not believe that the ineffectiveness was the result of any malice"

2

and that he believed his current counsel was "now best suited to protect his interest." He therefore stated that he "waive[d] his right to request new counsel based on any allegations of ineffectiveness."      On April 23, 2007, the Government filed a Motion for Extension of Time to File Sentencing Commentary (#69). The Government stated that it needed additional time in order to properly respond to objections to the presentence report filed by Ciota and to properly respond to the pro se motions filed by Knox. On April 25, 2007, this court granted the Government's motion by text order and allowed the Government until May 7, 2007, to file its Sentencing Commentary.

On April 25, 2007, Knox filed additional pro se motions. He filed a Motion to [Rescind] Defendant's Waiver of Ineffective Assistance of Counsel (#70). In this Motion, Knox stated that he now believed that he would be better served with his current counsel being appointed as "stand by" counsel. Knox also filed a Motion to Amend Defendant's Motion to Withdraw Plea, Motion to Dismiss, and Motion for Release under Rule 60(b) (#71).

In addition, on April 25, 2007, Knox's counsel, Rob Alvarado, filed a Second Motion to Continue Sentencing Hearing (#72). Knox's counsel stated that he could not effectively prepare for sentencing while the issues raised in Knox's pro se motions remained pending. Knox's counsel also stated that they had not yet received documents from Agent Bergan related to the loss amount calculations included in the presentence report. This court set a hearing on the motion to continue on May 10, 2007, at 3:00 p.m.

On May 8, 2007, the Government filed its Response to Knox's pro se Motions (#76). The Government argued that, in his pro se Motions, Knox had asserted a number of unsupported claims of involuntariness of his guilty plea, innocence, and ineffective assistance of counsel. The Government contended that Knox's unsupported claims of error and innocence were plainly frivolous, especially in light of his admissions under oath to this court during his guilty plea hearing.

3

According to the Government, these claims should be summarily denied, based upon the thorough Rule 11 colloquy conducted by this court.  The Government argued that Knox's motion was nothing more than a series of unsupported assertions, on the eve of sentencing, that directly contradict his statements at the change of plea hearing, and, as such, no hearing is necessary as to his claims that he should be allowed to withdraw his plea of guilty.

However, the Government noted that Knox had included claims of ineffective assistance of counsel as a ground for withdrawing his plea of guilty.  The Government stated that this court could readily conclude that these claims are likewise inherently unreliable and should be summarily denied.  However, the Government stated that Knox's ineffective assistance claims raise a potential for conflict of interest should his current appointed counsel continue to represent him.  The Government noted that, when a defendant raises a claim of ineffective assistance of counsel, he waives the attorney-client privilege as to all communications concerning the ineffectiveness claim.  The Government stated that it intends to call Knox's current counsel as a witness at any evidentiary hearing to directly refute Knox's allegations of ineffective assistance.  Thus, in order to maintain "the integrity of the judicial process," the Government requested that this court discharge Knox's current counsel and conduct a hearing on the ineffective assistance of counsel claims.  The Government stated that this court should inquire whether Knox wishes to have new counsel appointed or wishes to proceed as a pro se defendant at the hearing.

On May 9, 2007, Knox filed a pro se, handwritten, Motion Requesting Court's Order to Produce Documents and Evidence (#77).  In this Motion, Knox asked this court to order the Government to produce certain information.  Knox stated that the requested information had "material significance on sentencing factors."  Knox also stated that the requested information was significant as far as the Government's "ability to prosecute the defendant under mail, wire, or bank

4

fraud statutes."

On May 10, 2007, a hearing was held on Knox's Motion to Continue (#72). The Motion to Continue was GRANTED and the sentencing hearing scheduled for May 18, 2007 was vacated. A telephone status conference was scheduled for July 17, 2007, as to Defendants Ciota and Wiese. As far as Defendant Knox, a discussion was held regarding his pending pro se motions. After hearing argument, this court concluded that, because Knox has claimed that he was denied the effective assistance of counsel, his current counsel could no longer represent him without the appearance of a conflict of interest. Therefore, Mr. Alvarado was withdrawn as counsel for Knox. A hearing was scheduled for June 1, 2007, as to Defendant Knox to allow him to determine whether he wishes to proceed pro se or wishes new counsel to be appointed to represent him.

On May 17, 2007, Knox filed yet another pro se motion. Knox filed a Motion for Leave to File a Reply to the Government's Response (#78).

ANALYSIS

1. MOTION TO AMEND

On April 25, 2007, Knox filed a pro se Motion to Amend Motion to Withdraw Plea, Motion to Dismiss, and Motion for Release under Rule 60(b) (#71). Knox asked that he be allowed to include supplemental arguments related to the pro se Motions he previously filed. This Motion (#71) is hereby GRANTED. This court has considered Knox's supplemental arguments in ruling on his Motions.

2. MOTION FOR LEAVE TO FILE REPLY

On May 17, 2007, Knox filed a motion seeking leave to file a Reply to the Government's Response to his earlier filed pro se motions. This Motion (#78) is hereby GRANTED. This court has considered the arguments in Knox's Reply (which he labeled as a Commentary on Government's

Response to his pro se Motions) in ruling on his Motions.

### 3.  MOTION TO DISMISS INDICTMENT

In his 42-page pro se Motion, Knox argued that this court should dismiss the charges and indictment against him because: (1) the alleged scheme described in the indictment did not exist; (2) the required intent to defraud did not exist; (3) the required showing that Knox knew the lenders were financial institutions was not made; (4) there was misconduct by the prosecutor and lead agent; and (5) Knox's actions did not meet the legal standards for charges under 18 U.S.C. §§ 1341, 1343, or 1344.  Knox attached a seven-page exhibit to his Motion.  The first six pages was a spread sheet showing proceeds and disbursements from real estate transactions.  The seventh page was a list of case law citations.  In his supplemental arguments, Knox also argued that the indictment against him is ambiguous.  In his Reply, Knox stated that he "never admitted to the scheme, which is the essential element required for prosecution under the mail, wire and bank fraud statutes, at his change of plea hearing."  This court agrees with the Government that Knox's arguments contradict his statements made during his guilty plea hearing and are completely without merit.

As noted, on April 19, 2006, Knox pleaded guilty to all 11 counts of the superseding indictment against him.  On that date, this court conducted a lengthy and thorough colloquy with Knox pursuant to Rule 11 of the Federal Rules of Criminal Procedure.  At the hearing, Knox was administered an oath and was informed by this court that "that means that the answers to my questions will subject you to the penalty of perjury or making a false statement," criminal offenses for which consecutive sentences of imprisonment could be imposed.  Knox then stated that he was 60 years old, had completed high school and had attended Millikin University for four and one half years.  He stated that he also received an accreditation from the Northwestern School of Mortgage Banking.  Knox stated that he was satisfied with the representation of his attorney.  He also stated

6

that he had read the lengthy superseding indictment in this case "about 500 times" and indicated that

he was fully conversant with it.  Knox therefore waived reading the indictment at the hearing.  This

court then carefully and thoroughly explained to Knox all of the rights he was giving up by pleading

guilty.  This court also informed Knox that it would not accept his plea of guilty "unless I am

satisfied that you're doing that because you are, in fact, guilty and that there is a factual basis to

support that."

This court then discussed the sentences which could be imposed for Knox's convictions.

When this court asked Mr. Alvarado regarding Knox's understanding of the potential guideline

sentence he faced, Mr. Alvarado stated:

> Mr. Knox is a very intelligent client.  He's very knowledgeable about
>
> the federal sentencing guidelines.  We've discussed many possible
>
> enhancements.  Suffice it to say we have talked about long periods of
>
> imprisonment that could be imposed in this case.

After this court was satisfied that Knox understood the possible sentences he faced and that no one

had promised him that this court would impose a particular sentence, Knox agreed that his sentence

was "an unknown and uncertainty" he was willing to accept as a risk.

The prosecutor, Timothy A. Bass, then set out the elements of the offenses Knox was

pleading guilty to: bank fraud, wire fraud, mail fraud, and conspiracy to commit money laundering.

Mr. Bass then proceeded to set out a lengthy factual basis for the guilty pleas as follows:

> Your Honor, the government's evidence, in sum, would be
>
> that between 1999 and continuing into 2005, in the Central District
>
> of Illinois and elsewhere, the defendant and his codefendants, Mr.
>
> Ciota and Mr. Wiese, devised and participated in a scheme to defraud

various real estate lenders, including Central Illinois Bank of Champaign, a federally insured bank, real estate buyer - - real estate sellers, real estate buyers, and others to obtain their money and property by means of false and fraudulent pretenses, representations, and promises.

The object of the defendants' scheme to defraud was to engage in the practice of fraudulent real estate "flipping" whereby the defendants made false representations, including fraudulent real estate appraisals prepared by Defendant Wiese and used by Defendants Knox and Ciota, that caused real estate owners to sell, real estate buyers to purchase, and lending institutions to finance real estate properties that were sold at prices which the defendants caused to be fraudulently inflated to substantially higher than their reasonable value.

The defendants then reaped the benefits of the scheme by causing the payment of appraisal fees to Defendant Wiese and by Defendants Knox and Ciota converting the profits from their fraudulent transactions to their personal use and by using such profits to promote the ongoing scheme.

In seeking to achieve the objectives of their scheme the defendants devised and participated in, Mr. Knox in particular devised and participated in a total of more than 150 fraudulent real estate sale and financing transactions totaling more than $8 million.

8

The defendants fraudulently obtained a total of more than $3 million from the transactions which they converted to their personal use and used to promote their ongoing fraudulent scheme.

As a result of the scheme, the defendants caused substantial losses to various mortgage lenders and real estate sellers and buyers and caused buyers to file or face bankruptcy.

Particulars of the scheme, Your Honor, are set forth in detail in pages 5 through 13 of the indictment. And in essence, what those pages set forth is that Mr. Knox and his codefendant, Mr. Ciota, would go out and identify various owners of real estate, rental real estate to sell. Certain representations were made to various sellers whereby in most cases those sellers would agree to sell a piece of property at a particular price.

In one instance, though, however, regarding Count 1, Mr. Knox and Mr. Ciota sold a piece of real estate - - in two instances, Count 1 and Count 2, Mr. Knox and Mr. Ciota sold pieces of real estate without the approval of the owner of the real estate.

But in the remainder of the instances of these transactions, the seller would have agreed to sell a piece of property at a particular price. Mr. Knox and Mr. Ciota would then go out with Mr. Wiese, and those properties would be fraudulently inflated to a value much higher than their actual value. They then would locate or contact various real estate buyers to invest in this real estate and make

9

fraudulent representations to those buyers, including representations as to the worth of the property and how much money the buyers could make by buying the property.

Once the seller and buyer were located, then a fraudulent price established supported by an appraisal fraudulently rendered by Mr. Wiese, the defendants then would attempt to close the transaction and in most cases utilizing a mortgage broker who would assist the defendants in fraudulently obtaining financing from various lending institutions.

Those financing transactions were fraudulent because they included a host of false statements, including the fact - - including falsely representing that these buyers were making down payments on these properties when, in fact, no such down payments were being made.

Also when the loans would close, Mr. Knox would in many instances fraudulently elicit the cooperation of a particular mortgage broker who would advance Mr. Knox the loan proceeds from the transactions before the loans would even close.  He would then go out and get cash - - cash a check received by, from the mortgage broker and convert that check into other checks, one of which would be used to fraudulently represent that a down payment had been made.

Once these loans were closed, then the difference between the

10

value of the property and the inflated sale price would generate significant amounts of money, which then would largely be received by Mr. Knox and Mr. Ciota in that amount totaling more than $3 million for all 150 or more of the transactions.

Counts 1 through 10 of the indictment allege ten of these specific transactions, and the specifics of each transaction are set forth in each of the counts.

Counts 1, 8, and 9 relate to transactions involving loans that were financed by Central Illinois Bank of Champaign.

Counts 3, 4, 5, 6, 7, and 10, Your Honor, relate to transactions in which the loans were closed or assisted in being closed by the mailing of certain documents, either by the United States mails or by a private interstate mail carrier.

Count 2 relates to a transaction in which the proceeds of the loan were transmitted by wire to the mortgage - - to the title insurance company and then distributed at closing.

So that would be the factual basis in sum, Your Honor, as to Counts 1 through 10.

As to Count 11, Mr. Knox and Mr. Ciota between 2002 and 2005 knowingly and intentionally conspired with each other to commit various offenses in violation of 18 USC Section 1956, and essentially what the conspiracy involved was that Mr. Knox and Mr. Ciota conspired to conduct transactions, financial transactions which

11

were designed to promote their ongoing scheme or to conceal and disguise the location, source, ownership and control of the proceeds of those transactions, all of which involved the proceeds of specified unlawful activity; namely, the bank fraud, wire fraud, and mail fraud counts that are charged in Counts 1 through 10, as well as other counts that are not charged.

As a result of that conspiracy, Your Honor, the defendants, in fact, went out and engaged in many numerous financial transactions, including the issuance and negotiation of more than one million dollars in bank cashier's checks and personal bank checks involving the proceeds of the scheme with the intent, as I mentioned earlier, to promote the scheme or to conceal and disguise the proceeds generated from the scheme.

That, in sum, Your Honor, would be our evidence.

Following this recitation of the factual basis of Knox's plea of guilty to all 11 counts of the superseding indictment, Mr. Alvarado stated that he and Knox had viewed the discovery in the case and went through all of the evidence supporting the 11 counts of the indictment.  Mr. Alvarado stated that, based upon his professional evaluation of the discovery, he agreed with the factual basis presented by Mr. Bass, and stated that "Mr. Knox is admitting every element necessary to support convictions for all eleven counts of the indictment."  Mr. Alvarado stated, however, that Mr. Knox was contesting the scope of the fraud and the total loss amount at stake.  This court then stated its understanding that Mr. Knox was agreeing that the factual basis would support the elements of the 11 counts and was pleading guilty to the 11 counts, "but he would leave open for sentencing the

12

scope as to whether it encompasses this many transactions and this much money."  Mr. Alvarado replied, "That sums it up precisely."

This court then had the following exchange with Mr. Knox:

> [Court]     And, Mr. Knox, is that, in fact, the way you are framing your plea today: "I'm pleading to the eleven counts.  I agree with the factual basis.  I'm pleading guilty because I am, in fact, guilty; but at this point, I'm not admitting 150 transactions totaling more than $8 million"?

> [Mr. Knox]     That's correct, Your Honor.  Matter of fact, I was having a hard time deciphering how to do this, and Mr. Alvarado instructed me just what that he talked to you about and - -

> [Court]   Limiting it to the eleven counts and the elements - -

> [Mr. Knox]     Yes.

> [Court]   - - not the broader picture which will be presented to me at sentencing?

> [Mr. Knox]     That's correct.

> [Court]     Okay.  So, you have no problem in admitting your guilt to the elements in the eleven counts and the ten specific instances set forth in the superseding indictment?  You're pleading guilty because you are, in fact, guilty of these ten specific offenses and the elements of all eleven offenses?

> [Mr. Knox]   Yes, Your Honor.

> [Court]     And nobody's forced you to do that?

13

[Mr. Knox]   No.

[Court]     Threatened you in any way?

[Mr. Knox]   No.

[Court]     You're pleading guilty because you, in fact, did
what the government's alleged in those ten specific instances; and
you're also guilty of the conspiracy to commit money laundering as
set forth in the indictment, but not admitting more than 150
fraudulent real estate transactions totaling more than $8 million?

[Mr. Knox]    That's correct.

This court did not stop there.  This court then had a discussion with Mr. Knox about some
of the specific allegations in the superseding indictment, with Mr. Knox providing an explanation
of how some of the transactions worked.  In doing so, Mr. Knox agreed that Wiese "made inflated
appraisals that assisted in this scheme" which was "part of this fraudulent scheme, putting together
paper-inflated appraisals, transactions, money received" with Knox and Ciota converting the "profits
from the fraudulent sales to their personal use" and "to promote the ongoing fraudulent scheme."
Following this discussion, this court asked, "So, in effect, the money ultimately comes to you and
Mr. Ciota?"  Knox replied, "That is correct."  The following exchange then took place:

[Court]     And that happened - - and I'm not going to talk
about the number - - that happened in the transactions that are listed
in the ten counts, and you're not denying that?

[Mr. Knox]   I'm not denying that.

[Court]     And you're asking me at this time to accept your
plea of guilty to the eleven counts, enter a judgment of conviction,

14

vacate the final pretrial on Friday, vacate the jury trial set on May the

1ˢᵗ, and set this matter for sentencing, is that correct?

> [Mr. Knox]    That is correct.

> [Court]    And you're doing it of your own free will because
the discovery you've reviewed supports the plea; the factual basis
supports it; you did, in fact, do what the government's alleged in
these eleven counts as to the elements and as to the crime of bank
fraud, wire fraud, mail fraud, and conspiracy to commit money
laundering?

> [Mr. Knox]    That is correct.

This court then accepted Knox's guilty plea and a sentencing date was set.

In his Motion to Dismiss Indictment, Knox is essentially arguing that he has now discovered that the evidence is insufficient to support the charges against him.  He stated that, based upon information he received from Dan Bergan, the lead agent on the case,[1] "there is no evidence financially linking the charged offenses to each other, let alone financially linking the charged offenses to any uncharged conduct."  Based upon this perceived lack of necessary evidence, Knox argued that false information was provided to the grand jury and also argued that the superseding indictment was insufficient to allege federal crimes.  Knox contended that the indictment against him must therefore be dismissed.  This is, of course, complete nonsense.[2]

---

[1] This information was the spread sheet attached to his Motion.  This court notes that the document has handwritten comments written on it, presumably made by Knox.  The Government has noted that the document actually confirms the existence of numerous cashier's checks that were issued as part of the charged scheme.

[2] The Government has pointed out that Knox's claims rely on a supposed lack of evidence to support allegations that are not even included in the indictment or are not necessary to support

Rule 7(c)(1) of the Federal Rules of Criminal Procedure provides that an indictment "must be a plain, concise, and definite written statement of the essential facts constituting the crime charged[.]" Fed R. Crim. P. 7(c)(1). The standard for the sufficiency of an indictment is settled law in the Seventh Circuit. "For an indictment to be legally sufficient, it must accomplish three functions: it must state each of the elements of the crime charged; it must provide adequate notice of the nature of the charges so that the accused may prepare a defense; and it must allow the defendant to raise the judgment as a bar to future prosecutions for the same offense." United States v. Fassnacht, 332 F.3d 440, 444-45 (7th Cir. 2003). "[T]he sufficiency of an indictment is to be reviewed practically, with a view to the indictment in its entirety, rather than in any 'hypertechnical manner.'" Fassnacht, 332 F.3d at 445, quoting United States v. Smith, 230 F.3d 300, 305 (7th Cir. 2000). The "defendant's constitutional right is to know the offense with which he is charged, not to know the details of how it will be proved." Fassnacht, 332 F.3d at 446, quoting United States v. Kendall, 665 F.2d 126, 135 (7th Cir. 1981). Therefore, an "indictment that uses the language of the statute when setting forth the offense is usually sufficient 'as long as the statutory language unambiguously sets out all the elements necessary to constitute the offense.'" United States v. Locklear, 97 F.3d 196, 199 (7th Cir. 1996), quoting United States v. Allender, 62 F.3d 909, 914 (7th Cir. 1995).

In this case, the superseding indictment sets out the elements of all of the offenses charged

---

the charges against him. For example, Knox repeatedly asserts that, as to the bank fraud charges, the Government must prove that he knew the lender involved was federally insured and was a "financial institution" as defined by 18 U.S.C. § 20. He argued that the indictment is therefore insufficient because the Government did not allege it has proof that he knew the lender was a "financial institution." This argument is patently without merit because the Government is correct that it need only prove that the financial institution was insured and does not need to prove that defendants knew it was a federally insured financial institution. See 18 U.S.C. § 1344; United States v. Key, 76 F.3d 350, 353 (11th Cir. 1996); United States v. Brandon, 17 F.3d 409, 425-26 (1st Cir. 1994).

and, in fact, includes much factual detail.  This court therefore concludes that the superseding indictment is more than sufficient under the applicable standard.  The fact that Knox now believes, in complete contrast to the statements he made at the guilty plea hearing, that the Government's evidence against him is lacking has absolutely no bearing on the sufficiency of the superseding indictment.  Knox has also fallen far short of showing that any false information was provided to the grand jury.  Moreover, the Government is correct that, because Knox pled guilty, he cannot now challenge the sufficiency of the indictment.  See United States v. Tolson, 988 F.2d 1494, 1500-01 (7th Cir. 1993).

For all of the reasons stated, Knox's Motion to Dismiss Indictment (#66) is DENIED.

## 4.  MOTION FOR RELIEF FROM CHANGE OF PLEA

In his 14-page Motion, Knox argued that he should be allowed to vacate his guilty plea under Rule 60(b) of the Federal Rules of Civil Procedure which he states "allows for relief to a party from a proceeding for fraud, misrepresentation, or misconduct of an adverse party."  Knox contended that the statements made by the prosecutor at the guilty plea hearing, in setting out the factual basis for the plea "were not accurate and were the product of misrepresentation, and misconduct, as the government knew these statements were false when they made them."  In support of this bold assertion, Knox stated that "the government knew they had no evidence that linked any of the transactions between 1999 and 2005 into one ongoing scheme."  Knox stated that the "lack of profit connection means there was no one ongoing scheme as described in the indictment and implied by government at the change of plea hearing."  Knox went on to disagree with other statements made by the prosecutor at the guilty plea hearing in setting out the factual basis for the plea.  Knox now claims that he did not intend to defraud anyone and, in fact, no one involved in the real estate transactions was exposed to any risk of loss.  In his supplemental arguments, Knox also contended

17

that he is entitled to relief under Rule 60(b)(1) based upon mistake, inadvertence, surprise or excusable neglect.

This court agrees with the Government that Knox's claims are entirely unsupported and are directly contradicted by Knox's statements, under oath, at the guilty plea hearing. This court further agrees that Knox has cited no authority which would allow him to challenge a valid guilty plea under Rule 60(b). Accordingly, Knox's Motion for Relief from Change of Plea (#67) is DENIED.

### 5. MOTION TO WITHDRAW GUILTY PLEA

### A. CLAIMS OF "LEGAL INNOCENCE" AND THAT PLEA

### WAS NOT KNOWING AND VOLUNTARY

In his Motion, filed almost one year after his guilty plea and after he received the presentence report, Knox argued that he should be allowed to withdraw his guilty plea. Knox again contended that the Government lacks evidence and that the scheme described in the indictment did not exist. He argued that he should be allowed to withdraw his plea of guilty because he is "legal[ly]" innocent. Knox attached as an exhibit to his Motion the same six-page spread sheet he attached to his Motion to Dismiss Indictment. Knox also argued that his guilty plea was not made voluntarily or knowingly because the Government made misstatements and omissions regarding the factual basis for the plea and because this court's colloquy was incomplete.

In its Response, the Government argued that Knox's arguments are contrary to the record in this case and completely without merit.[3] This court agrees with the Government's arguments.

"A plea of guilty is a 'grave and solemn act.'" United States v. Loutos, 383 F.3d 615, 619

---

[3] The Government noted that, in 1993, in this district, Knox entered into a plea agreement and pled guilty to bank fraud and mail fraud, in exchange for the dismissal of the remaining counts. At sentencing, Knox denied "that there was a scheme to defraud." In calculating Knox's sentencing range, the court in that case found that he had not accepted responsibility and had obstructed justice.

(7th Cir. 2004), quoting United States v. Ellison, 798 F.2d 1102, 1006 (7th Cir. 1986).  A guilty plea admits, in legal effect, the facts as charged.  Loutos, 383 F.3d at 619.  "The purpose of a Rule 11 colloquy is to expose coercion and mistake, and the district judge must be able to rely on the defendant's sworn testimony at that hearing."  Loutos, 383 F.3d at 619.  Representations and admissions made by a defendant during a change of plea hearing are entitled to "a presumption of verity."  Loutos, 383 F.3d at 619, quoting United States v. Pike, 211 F.3d 385, 389 (7th Cir. 2000).

Therefore, a defendant's right to withdraw a guilty plea is not absolute.  United States v. Lundy, 484 F.3d 480, 2007 WL 1246608, at *3 (7th Cir. 2007); United States v. Underwood, 174 F.3d 850, 852 (7th Cir. 1999).  "A guilty plea, once accepted by the court, may be withdrawn only for a 'fair and just reason,' and the burden of justifying relief rests with the defendant."  Lundy, 2007 WL 1246608, at *3, citing Fed. R. Crim. P. 11(d)(2)(B).  "'[A] district court is generally justified in discrediting the proffered reasons for the motion to withdraw and holding the defendant to [his] admissions' during the plea colloquy."  Lundy, 2007 WL 1246608, at *3, quoting Pike, 211 F.3d at 389.  In particular, "a defendant's bare protestations of innocence–especially after a knowing and voluntary guilty plea in a thorough Rule 11 colloquy–will not suffice."  United States v. Carroll, 412 F.3d 787, 792 (7th Cir. 2005); see also United States v. Hodges, 259 F.3d 655, 661 (7th Cir. 2001) (district court does not have to conduct a hearing based on "naked claims of innocence").  Furthermore, a defendant's subsequent belief that the Government lacks evidence against him does not justify withdrawing a guilty plea.  See Underwood, 174 F.3d at 854 ("a guilty plea entered by a defendant who does not see the prosecution's hand in advance will still be voluntary if, as was true in this case, the plea follows disclosure of an adequate factual basis"); United States v. Silva, 122 F.3d 412, 415 (7th Cir. 1997) (defendant not entitled to withdraw guilty plea "because he has misapprehended the strength of the government's case or, upon reevaluation of the situation, can

conceive of an arguable defense"). Rule 11 "does not require the trial judge at the plea hearing to air all of the government's evidence." <u>Underwood</u>, 174 F.3d at 854, <u>quoting</u> <u>United States v. Seybold</u>, 979 F.2d 582, 587 (7th Cir. 1992). In addition, a district court can be understandably skeptical of a claim of innocence which comes after the defendant has seen the presentence report. <u>See</u> <u>Carroll</u>, 412 F.3d at 792.

The validity of a Rule 11 colloquy is based upon the totality of the circumstances, including such factors as "the complexity of the charge, the defendant's level of intelligence, age, and education, whether the defendant was represented by counsel, the judge's inquiry during the plea hearing and the defendant's statements, as well as the evidence proffered by the government." <u>Loutos</u>, 383 F.3d at 619, <u>quoting</u> <u>United States v. Blalock</u>, 321 F.3d 686, 688-89 (7th Cir. 2003).

In this case, the totality of the circumstances surrounding Knox's plea colloquy on April 19, 2006, establishes that his plea was knowing and voluntary. <u>See</u> <u>Loutos</u>, 383 F.3d at 619. At the hearing, it was established that Knox was 60 years old, is highly intelligent and educated. Knox was represented by counsel and stated that he was satisfied with his counsel's representation. This court conducted a very thorough colloquy and the Government set out a detailed, complete factual basis for the guilty plea. Most importantly, Knox stated at the hearing that he understood the charges against him, agreed that there was an adequate factual basis to support his guilty plea and even answered this court's questions about how the transactions charged in the superseding indictment worked. Knox stated, on more than one occasion, that he was pleading guilty because he was, in fact, guilty. Knox specifically agreed with this court that he was pleading guilty of his own free will because the discovery he reviewed supported it, the factual basis provided by the Government supported it and he "did, in fact, do what the government's alleged in these eleven counts as to the elements and as to the crime of bank fraud, wire fraud, mail fraud, and conspiracy to commit money

laundering."

Based upon the record in this case, this court concludes that Knox's claim of "legal innocence" is completely meritless. This court also concludes that Knox's claims that his guilty plea was not knowing and voluntary and this court's Rule 11 colloquy was incomplete are without merit and, in fact, are patently frivolous.

## B. INEFFECTIVE ASSISTANCE OF COUNSEL

In his Motion, Knox also argued that he should be allowed to withdraw his plea of guilty because his counsel was ineffective. Specifically, he contended that his counsel: (1) did not advise him of the facts required to be shown by the Government in order the show the existence of the scheme alleged in the indictment; (2) did not advise him of the necessity of the scheme described in the indictment to be proven in order to justify a conviction of the charged counts; (3) erred in advising him he could plead guilty to the mail fraud, bank fraud and wire fraud charges based on conduct other than the scheme described in the indictment; (4) did not advise him that the charged counts had to be part of the scheme alleged in the indictment; (5) did not advise him of the defenses to the charged conduct; (6) did not advise him that the charged conduct had to be the result of executions of the scheme alleged in the indictment; (7) did not investigate the relationship of the mailings or wire communications to the charged offenses; and (8) did not advise him that the Government would have to prove he knowingly entered into a scheme to defraud a federally insured bank. Knox stated that, if advised correctly, he would not have pled guilty because he has, at all times, denied the existence of the alleged scheme. Knox attached his affidavit in support of his Motion.

In its Response, the Government argued that these claims also are contrary to the record and without merit. However, as noted previously, the Government recommended that this court hold

a hearing on the claims of ineffective assistance of counsel.

"Ineffective assistance of counsel can render a plea agreement involuntary, and is therefore a valid basis for withdrawing a guilty plea." Lundy, 2007 WL1246608, at *3, citing Hill v. Lockhart, 474 U.S. 52, 57 (1985); see also Carroll, 412 F.3d at 792. To demonstrate ineffective assistance of counsel in this context, a defendant must show: (1) that counsel's performance was objectively unreasonable; and (2) that, but for counsel's errors, the defendant would not have pled guilty. Lundy, 2007 WL 1246608, at *3; Carroll, 412 F.3d at 793. "The test is 'highly deferential' to counsel and presumes reasonable judgment and effective trial strategy." Carroll, 412 F.3d at 793, citing Hays v. United States, 397 F.3d 564, 568 (7th Cir. 2005).

This court believes that Knox will have a difficult time meeting this burden based upon the record in this case.[4] However, this court agrees with the Government that the best course of action is to hold a hearing on Knox's claim of ineffective assistance of counsel. As noted previously, this court has already withdrawn Mr. Alvarado as Knox's counsel. This action was taken because the appearance of a conflict of interest existed based on Knox's pro se motion claiming that Mr. Alvarado provided ineffective assistance. See United States v. Morris, 259 F.3d 894, 898-900 (7th Cir. 2001) (court found actual conflict of interest existed where the defendant claimed that he should be allowed to withdraw his guilty plea based on ineffective assistance of counsel). Therefore, this court concluded that Mr. Alvarado could not continue to represent Knox or even act as standby counsel. Therefore, Knox's Motion to Rescind Defendant's Waiver of Ineffective Assistance of Counsel (#70), in which he requested that Mr. Alvarado be allowed to continue as standby counsel, is DENIED as moot.

---

[4] As in Carroll, Knox's contention that Mr. Alvarado's performance was objectively unreasonable stands in sharp contrast to his testimony during his plea colloquy that he was satisfied with Mr. Alvarado's representation. See Carroll, 412 F.3d at 793.

This court set a status conference in this case for June 1, 2007, at 9:30 a.m. and informed Knox that he will need to decide whether he wants to proceed pro se or have new counsel appointed to represent him. Knox inquired whether he could have new counsel appointed to act as standby counsel. This court concludes that appointing new counsel to act as standby counsel would not be appropriate at this stage of the proceedings.

This court notes that Knox has filed numerous pro se motions in this court. A defendant who wants to act as his own lawyer is effectively waiving his right to counsel and, therefore, must exercise that choice "knowingly and intelligently." Faretta v. California, 422 U.S. 806, 835 (1975); United States v. Sandles, 23 F.3d 1121, 1126 (7th Cir. 1994). This court has an obligation to conduct an inquiry to assure that a defendant knows what he is doing and that his choice is made with his eyes open. See Faretta, 422 U.S. at 835; United States v. Hill, 252 F.3d 919, 923-26 (7th Cir. 2001). This court must explain the dangers and disadvantages of self-representation in a manner that cannot be cursory or "by the way." See Sandles, 23 F.3d at 1126. However, a defendant has no right to "hybrid representation," where he represents himself and gets the benefit of full counsel. See United States v. Kosmel, 272 F.3d 501, 506 (7th Cir. 2001); United States v. Oreye, 263 F.3d 669, 672-73 (7th Cir. 2001).

At the hearing on June 1, 2007, this court intends to fully advise Knox regarding the disadvantages of self-representation in this matter. This court notes that Knox may have already disadvantaged himself because, if he is unsuccessful in his attempt to withdraw his guilty plea based upon ineffective assistance of counsel, under the advisory sentencing guidelines he is almost certainly facing a loss of acceptance of responsibility and may also be facing an enhancement for

obstruction of justice.  See Carroll, 412 F.3d at 792.[5]  Knox may well decide that he needs new counsel appointed to advise him at this point in the proceedings.  If new counsel is appointed and undertakes the preparation necessary to represent Knox, this court concludes that Knox must accept the representation and not continue to represent himself.  This court concludes that, at this stage of the proceedings, it would not make sense for new counsel to take on the necessary preparation only to act as standby counsel.

## 6.  MOTION REQUESTING COURT'S ORDER TO PRODUCE
## DOCUMENTS AND EVIDENCE

In this Motion, Knox asked this court to order the Government to produce certain information.  Knox stated that the requested information had "material significance on sentencing factors."  Knox also stated that the requested information was significant as far as the Government's "ability to prosecute the defendants under mail, wire, or bank fraud statutes."  This court concludes that Knox is clearly not entitled to information regarding the Government's "ability to prosecute" at this stage of the proceedings.  Therefore, that portion of his request is DENIED.  This court is unclear as to exactly what information Knox is seeking regarding sentencing factors.  Therefore, because a hearing will be scheduled in this matter, this request is reserved and will be taken up at the hearing.

IT IS THEREFORE ORDERED THAT:

(1) Knox's Motion to Amend Motion to Withdraw Plea, Motion to Dismiss, and Motion for Release under Rule 60(b) (#71) is GRANTED.

(2) Knox's Motion for Leave to File Reply to the Government's Response (#78) is

---

[5] This court notes that these possible consequences cannot be a surprise to Knox because it is precisely what happened in his prior case in this district.

GRANTED.

(3) Knox's Motion to Dismiss Indictment (#66) is DENIED.

(4) Knox's Motion for Relief from Change of Plea (#67) is DENIED.

(5) Knox's Motion to Withdraw Guilty Plea (#68) is DENIED as far as Knox's claims of "legal innocence" and that his guilty plea was not knowing and voluntary.  As far as Knox's claim that he should be allowed to withdraw his guilty plea because he received ineffective assistance of counsel, this court reserves ruling pending a hearing on this claim.

(6) Knox's Motion to Rescind Defendant's Waiver of Ineffective Assistance of Counsel (#70) is DENIED as moot.

(7)  Knox's Motion Requesting Court's order to Produce Documents and Evidence (#77) is DENIED in part and, in part, reserved for ruling at the hearing to be set in this case

(8) This case remains scheduled for a status hearing on June 1, 2007, at 9:30 a.m.  At that hearing, Knox will be required to decide whether he wants to proceed pro se or have new counsel appointed to represent him. A hearing will then be scheduled regarding Knox's claim that he should be allowed to withdraw his guilty plea because he received ineffective assistance of counsel.

ENTERED this 31st day of May, 2007

**s/ Michael P. McCuskey**
MICHAEL P. McCUSKEY
CHIEF U.S. DISTRICT JUDGE